**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Robert E. Werbicky and Deanna L. Werbicky, | 2:12–cv–01567–JAD–NJK |
| Plaintiffs | **Order Granting in Part Cross-Motions for Summary Judgment** |
| v. | |
| Green Tree Servicing, LLC, | [ECF 121, 123] |
| Defendant | |

Robert and Deanna Werbicky sue Green Tree Servicing, LLC for a handful of federal and state common-law tort claims arising from Green Tree's debt-collection activities on the Werbickys' mortgage loan. The Werbickys move for summary judgment on their Fair Debt Collection Practices Act claim and Green Tree's affirmative defense of ratification. Green Tree countermoves for summary judgment on all of the Werbickys' claims. For the reasons below, I grant summary judgment in favor of the Werbickys on Green Tree's ratification defense, grant summary judgment in favor of Green Tree on the Werbickys' FDCPA claim to the extent that it is based on violations of § 1592f and on all state-law claims, deny the remainder of the parties' motions, and refer this case to the magistrate judge for a settlement conference.[1]

**Background**

The Werbickys purchased a home on Bella Citta Street in Clark County, Nevada, in 2006. They contracted with a mortgage broker, Residential Capital Corp., and ultimately had to obtain two mortgage loans to finance the total purchase price.[2] The first mortgage loan—a $553,200 promissory note secured by a deed of trust identifying "First Horizon Home Loan Corporation" as the lender and the beneficiary[3]—is not at issue in this lawsuit. Only the second mortgage loan—a

---

[1] I find these motions suitable for disposition without oral argument. L.R. 78-2.

[2] ECF 121-1 at 28.

[3] ECF 123-6 at 39-40.

$103,732 promissory note secured by a deed of trust—is at issue here.

On January 26, 2006, the Werbickys initialed and signed the three-page promissory note naming "Residential Capital Corp" as the lender.[4]  They also initialed and signed the seven-page deed of trust naming "Residential Capital Corp" as the beneficiary.[5]  However, at some time before the deed of trust was recorded on February 6, 2006, a new first page of the trust materialized naming "First Horizon Home Loan Corporation" as the beneficiary and containing initials that the Werbickys allege are not theirs, while pages two through seven appear to contain identical initials and signatures as the version that the Werbickys acknowledge they signed.[6]  In addition, presumably around the same time, a new *page 1* of the note materialized naming "First Horizon Home Loan Corporation" as the lender and omitting the Werbickys' initials, while pages two through three appear to contain identical initials and signatures as the version of the note that the Werbickys say they signed.[7]  The "First Horizon Home Loan Corporation" version of the note and deed of trust became the operative instruments for the Werbickys' second mortgage loan.[8]

First Horizon then assigned the second note and deed of trust RBS Citizens, N.A. in 2009, and RBS hired Green Tree to service the loan.[9]  Green Tree obtained the collateral account file, including the note with the original endorsement, from the previous loan servicer and audited the documents in accordance with its standard policy and procedure.[10]  On October 16, 2009, Green Tree sent the Werbickys a letter notifying them of the servicing transfer and of their right to dispute the

---

[4] ECF 121 at 26, ¶ 4; ECF 121 at 29, ¶ 4; ECF 121-1 at 2–4.

[5] ECF 121 at 26, ¶ 4; ECF121 at 29, ¶ 4; ECF 121-1 at 6–12.

[6] ECF 121 at 27, ¶ 8; ECF 121 at 30, ¶ 8; ECF 121-1 at 14–20.

[7] ECF 121 at 27, ¶ 8; ECF 121 at 30, ¶ 8; ECF 121-1 at 23–26.

[8] Unless otherwise indicated, references to "note" and "deed of trust" mean the "First Horizon Home Loan" version of those instruments.

[9] ECF 123-1 at 5, ¶¶ 11–12.

[10] ECF 123-1 at 5, ¶¶ 12–13.

validity of the debt.[11]  The Werbickys sent Green Tree a letter disputing the validity of the debt on November 2, 2009.[12]  Green Tree responded by sending the Werbickys a letter and a copy of the note.[13]  The Werbickys did not respond.

On January 26, 2011, the Werbickys entered into a Conditional Settlement Agreement with First Horizon on the first mortgage loan that contemplated a short-sale of the property.[14]  The agreement required the Werbickys to list the property for sale and obtain a sales contract that would qualify for First Horizon's short-sale program and also required the Werbickys to satisfy the note so the second deed of trust could be removed from the property.[15]  The Werbickys contacted Green Tree to obtain a settlement on the note and the parties negotiated a settlement, which Green Tree memorialized in an August 30, 2011, "settlement in full" offer agreeing to accept a $22,504 payment on the note in exchange for releasing the second deed of trust.[16]

However, Mr. Werbicky contends that around September 8, 2011, he discovered that the note had been altered.[17]  On September 9, 2011, Mr. Werbicky sent Green Tree a letter explaining the issue and attached several documents, including his copies of the "Residential Capital Corp" note and a Borrower's Certification & Authorization naming "Residential Capital Corp" as the lender.[18]  Mr. Werbicky alleges that he repeatedly called Green Tree after sending the letter, but he never received a response.[19]  Green Tree's August 30, 2011, settlement offer expired on September 9,

---

[11] ECF 123-7 at 2.

[12] ECF 123-8 at 2.

[13] ECF 123-9 at 2–5.

[14] ECF 123-3.

[15] ECF 123-3 at 39–43; ECF 121 at 30, ¶ 17.

[16] ECF 121-1 at 62–63.

[17] ECF 121 at 31, ¶ 20.

[18] ECF 121-2 at 7–18.

[19] ECF 121 at 31, ¶ 23.

2011.[20]

On September 19, 2011, the Werbickys' agent contacted Green Tree and requested an extension of the settlement offer.[21]  Green Tree issued a second "settlement in full" offer containing the same terms and requiring payment by September 30, 2011.[22]  On September 30, 2011, the Werbickys paid Green Tree $22,504 on the note.[23]  Green Tree released the second deed of trust and the Werbickys completed the short-sale of their home.[24]

The Werbickys filed this lawsuit against Green Tree almost one year later, alleging violations of the Fair Debt Collection Practices Act (claim one) and state-law claims for slander of title (claim two) and intentional interference with a contractual relationship (claims three and four).[25]  I previously denied without prejudice the parties' summary-judgment motions, and ordered them to resubmit their motions in compliance with this district's local rules.[26]  This order addresses the parties' renewed motions.[27]

## Discussion

### A.    Summary-judgment standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[28]  When considering summary judgment, the court views all facts and draws all inferences in

_____

[20] ECF 121-1 at 62.

[21] ECF 121-2 at 27.

[22] ECF 121-2 at 2–3.

[23] ECF 121-2 at 41.

[24] ECF 123-15 at 2.

[25] ECF 1.

[26] ECF 120.

[27] ECF 121, 123.

[28] _See Celotex Corp. v. Catrett_, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

the light most favorable to the nonmoving party.[29]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[30]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[31]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[32]  The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[33]

**B.    Neither party is entitled to summary judgment on the Werbickys' Fair Debt Collection Practices Act claim.**

The FDCPA prohibits "abusive, deceptive, and unfair debt collection practices."[34]  The FDCPA is a strict liability statute, so debt collectors need not knowingly or intentionally violate its

---

[29] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[30] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[32] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[33] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.  The Werbickys raise numerous evidentiary objections to Green Tree's exhibits.  I will consider the note and deed of trust because I find that these documents have been properly authenticated under FRE 901(b)(4), and they are not inadmissible hearsay as the Werbickys contend.  The Werbickys' objections to ¶¶ 6, 12 and 32 of Peter Dalpiaz's affidavit are also without merit.  The objected-to portions of the Dalpiaz affidavit do not contain improper opinion testimony or hearsay.  I decline to address the Werbickys' remaining evidentiary objections because they are not material to my ruling.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citation omitted).

[34] 15 U.S.C. § 1692.

5

provisions to be liable.[35]  And "[b]ecause the FDCPA is a remedial statute, it should be construed liberally in favor of the consumer and, when in doubt, against debt collectors."[36]

The Werbickys argue that they are entitled to summary judgment on their FDCPA claim because the undisputed facts show that Green Tree violated the Act by making false or misleading representations (§ 1692e) and engaging in unfair collection practices (§ 1692f), and damages are not disputed.[37]  Green Tree also moves for summary judgment in its favor on the Werbickys' FDCPA claim, arguing that the Werbickys should be equitably estopped from bringing this claim, and that the claim is time-barred and precluded by the September 30, 2011, settlement agreement.[38]  Green Tree also argues that the Werbickys lack evidence to show that Green Tree engaged in any improper debt collection activity, and even if the Werbickys could show a violation, it is subject to Green Tree's bona fide error defense.[39]  The Werbickys respond that they did not release or waive any claims against Green Tree, that their claims are not time-barred or precluded by equitable estoppel, and that Green Tree cannot prevail on its bona fide error defense.[40]

### 1. The FDCPA claim is not time-barred.

Green Tree's argument that the Werbickys' FDCPA claim is subject to Nevada's three-year limitations period for fraud-based claims is without merit.  When Congress expressly establishes a limitations period on a federal claim, it controls.[41]  Congress has expressly set a limitations periods

---

[35] *Clark* v. *Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006) (citations omitted).

[36] *Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-CV-201, 2013 WL 755674, at *2 (S.D. Cal. Feb. 27, 2013) (citations omitted); *see also Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 705 (9th Cir. 2010), *abrogated by Marx v. Gen. Revenue Corp.*, 133 S. Ct. 166, 185 (2013) ("[T]he FDCPA should be construed liberally to effect its remedial purpose.").

[37] *See* ECF 121.

[38] *See* ECF 123.

[39] *Id.* at 21–23.

[40] ECF 124.

[41] *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946).

6

1   for all claims brought under the FDCPA: a plaintiff alleging a FDCPA violation must bring a claim

2   "within one year from the date on which the violations occurs."[42]

3      Because the Werbickys filed their complaint on September 4, 2012, to be actionable, the

4   complained-of violations must have occurred between September 4, 2011, and September 4, 2012.

5   They did.  The Werbickys allege the misrepresentation of the debt in the September 19, 2011,

6   settlement offer letter and Green Tree's collection of the $22,504 on September 30, 2011.  I reject

7   Green Tree's argument that all violations relate back to 2009 when it first began servicing the loan

8   and therefore could not trigger a new limitations period.  "[N]othing in the language of the FDCPA

9   suggests that the statute of limitations runs from the first possible violation and encompasses all

10  later-occurring and distinct violations."[43]  To the contrary, courts have held that "discrete" FDCPA

11  violations arising within the limitations period should be analyzed on an individual basis and not

12  lumped together with violations that fall outside of the limitations period, even if the violations are

13  all related to the same debt.[44]  Accordingly, I find that the Werbickys' FDCPA claim is timely, and

14  Green Tree is not entitled to summary judgment on this basis.

---

19  [42] 15 U.S.C. § 1692k(d).

20  [43] *Malik v. Unifund CCR Partners,* No. C09-1389, 2009 WL 5197820, at * 5 (W.D. Wash. Dec. 22,
    2009) (holding FDCPA claim based on a wage garnishment occurring within statute of limitations
21  was not time-barred, even though other garnishments occurred outside limitations period).

22  [44] *See Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 611 (D. Nev. 1997) (holding
    FDCPA claim based on communications occurring within the one-year limitations period was not
23  barred); *see also Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 57–58 (D. Conn. 2011) (holding
    duplicate copies of letter agreements containing disputed language constituted discrete FDCPA
24  violations).

25     In support of its "continuing" violation theory, Green Tree cites to non-binding district court
    cases holding that "new communications from an old claim do not start a new period of limitations."
26  But these cases involve fact patterns in which the "violations" within the one-year period constituted
    repeated misrepresentations in court filings or to a credit-reporting agency, rather than repeated
27  communications from the debt collector directly to the consumer attempting to collect a debt.

28

1    **2.**      ***The Werbickys did not waive their right to sue under the FDCPA.***

2          Green Tree next argues that the Werbickys cannot recover under the FDCPA because they

3    waived their right to pursue a civil remedy under 15 U.S.C. § 1692g.[45]  Under § 1692g, within five

4    days after the initial communication with a consumer in connection with collecting a debt, a debt

5    collector must send the consumer a "notice of debt" that provides certain information about the debt

6    and explains that the consumer must notify the debt collector within 30 days if he disputes the

7    validity of the debt.[46]

8          It is undisputed that the Werbickys complied with the FDCPA by disputing the debt

9    with Green Tree within 30 days of receiving Green Tree's validation notice.[47]  There is no support

10   for Green Tree's theory that, despite complying with the 30-day requirement, the Werbickys waived

11   their right to sue because they did not also file suit at that time.[48]  The FDCPA does not provide that

12   a consumer waives the right to pursue a civil remedy under the FDCPA challenging the debt

13   collector's conduct based on the validity of the debt if he disputes the validity of the debt within the

14   30-day period but does not file suit at that time.[49]  Accordingly, I find that the Werbickys did not

15   waive their right to pursue a civil remedy under the FDCPA.

16

17

18   _____

     [45] ECF 125 at 8–9.

19
     [46] 15 U.S.C. § 1692g(a).

20
     [47] ECF 123-8 at 2; ECF 123-9 at 2–5.

21

22   [48] The nonbinding cases Green Tree cites are inapposite because the consumers in those cases failed
     to dispute the validity of the debt within the FDCPA's 30-day period.  *See* ECF 125 at 8 (citing
     *Richmond v. Higgins*, 435 F.3d 825, 829 (8th Cir. 2006); *Campbell v. Credit Bureau Sys., Inc.*, 655

23   F. Supp. 2d 732, 741–42 (E.D. Ky. 2009); *Senftle v. Landau*, 390 F. Supp. 2d 463, 475 (D. Md.
     2005)).

24
     [49] *Cf. Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th Cir. 2014) (explaining that

25   had Congress wanted to require a pre-suit validation procedure, Congress would have explicitly said
     that in the statute).  I also note that, in the December 2, 2009, validation letter, Green Tree itself

26   instructed the Werbickys to provide further detail if they still contested the validity of the debt;
     notably, however, Green Tree did not provide any time period in which the Werbickys were required

27   to respond.

28
                                                          8

1

### 3.     The settlement contract does not preclude the FDCPA claim.

2       Green Tree next argues that it is entitled to summary judgment because the Werbickys

3  "released" all issues related to the note and deed of trust when they accepted Green Tree's settlement

4  offer by making the $22,504 payment.[50]  This defense is also without merit.

5       The settlement offer does not contain any express release of contingent or future claims

6  arising under the note or deed of trust.  Any waiver of a benefit provided for a party's protection by a

7  statute must be knowing or intelligent.[51]  Beyond Green Tree's assertion about what it believes

8  "settlement in full" should entail, there is no evidence that the Werbickys knowingly relinquished

9  their right to pursue a civil remedy based on the FDCPA's protections when they settled the debt.

10  And a finding that the Werbickys implicitly released their right to sue based on Green Tree's

11  violation would produce consequences squarely at odds with the statute's public-policy goal of

12  preventing "abusive, deceptive, and unfair debt collection practices."[52]

13       I also reject Green Tree's related argument that the Werbickys should be denied relief under

14  the FDCPA based on a breach of the covenant of good faith and fair dealing.  Because the Werbickys

15  did not contract away their right to sue under the FDCPA, Green Tree can hardly be deprived of the

16  benefit of its bargain by this suit.

17

18

19

20  [50] The relevant language in the settlement offer:

21       The current payoff on your above-referenced account is **$108,426.32**.  Please be
         advised that Green Tree . . . will accept **$22,504.00** as settlement in full on the

22       account.  Any funds in your escrow account will be applied to your remaining loan
         balance.  Upon receipt and verification of good funds, Green Tree will release the

23       deed of trust/mortgage and the Note will be settled in full.  ECF 121-2 at 2–3.

24  [51]  *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170–71 (9th Cir. 2006)
     (citation and internal quotation marks omitted) (finding where statutory waivers are permissible, they

25  must be "knowing or intelligent, which means the individual has sufficient awareness of the relevant
     circumstances and likely consequences of his decision").

26  [52] 15 U.S.C. § 1692; *see Clark*, 460 F.3d at 1171 n. 5 (noting that a debtor cannot "waive protection
     from practices the FDCPA seeks to eliminate" because that would contravene the FDCPA's public-

27  policy goals).

28                                        9

1          **4.      The doctrine of equitable estoppel does not bar the FDCPA claim.**

2          Green Tree also contends that it is entitled to summary judgment because the Werbickys

3   should be equitably estopped from bringing any claims based on the note and deed of trust.  Even if

4   equitable estoppel applies to FDCPA claims, Green Tree has failed to establish the defense.

5          A party asserting equitable estoppel must show:

6          (1) the party to be estopped must know the facts; (2) he must intend that his conduct
           shall be acted on or must so act that the party asserting the estoppel has a right to
7          believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he
           must rely on the former's conduct to his injury.[53]
8

9   Green Tree argues that the Werbickys are equitably estopped from bringing their claims because they

10  did not notify Green Tree that they were pursuing the default judgment in state court when the

11  parties entered into the settlement agreement, and Green Tree would not have entered into the

12  settlement agreement had it known about the state-court suit to invalidate the debt.[54]  The state-court

13  default judgment cannot prejudice Green Tree in this case given my previous decision not to afford

14  that judgment full-faith-and-credit recognition.[55]  And Green Tree's argument that it was duped into

15  the settlement agreement because it believed "that the parties settled the amount owed. . . . , as well

16  as [associated] any claims and defenses"[56] is likewise unavailing.  The Werbickys did not release or

17  waive their ability to pursue a civil remedy under the FDCPA in the settlement agreement, and when

18  Green Tree made the settlement offer, it had the same facts as the Werbickys, and it knew about the

19  note's alleged deficiencies.[57]  Accordingly, the Werbickys are not equitably estopped from suing

20

21  [53] *See Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

22  [54] ECF 123 at 12–14.

23  [55] ECF 120.

24  [56] ECF 123 at 13.

25  [57] Green Tree continually infers that because the copy of the Residential Capital Corp note attached
    to the letter was illegible, the Werbickys did not provide it with sufficient information to consider.
26  This is wholly unavailing. The body of the letter sufficiently explained the differences between the
    two versions of the notes. And Green Tree does not cite to any statute or case law explaining that the
27  consumer is required to send a debt collector copies of any documents.

28                                                    10

1  Green Tree.[58]

2  **C.  Summary judgment is not warranted on the legal status of the note or deed of trust, but
3      the Werbickys are entitled to summary judgment on Green Tree's ratification defense.**

4      The Werbickys argue that there was no valid debt for Green Tree to collect because: (1) their

5  duty under the note was discharged; and (2) the deed of trust was vitiated by forgery.  Both parties

6  agree that the claim is dependent on the legal status of these instruments: if there was no valid debt

7  to collect on, then the Werbickys have a viable FDCPA claim; but if the debt was enforceable by

8  Green Tree, then there is no basis for the claim.  Both parties move for summary judgment on these

9  issues.

10      The Werbickys contend that the changes to the first page of the note and the first page of the

11  deed of trust are "forgery"—material alterations that vitiated both instruments.  Green Tree responds

12  that the Werbickys have not established by clear and convincing evidence that either the note or the

13  deed of trust was forged.

14      Under Nevada law, an "alteration" is an unauthorized change in an instrument that modifies

15  the obligation of a party.  Only fraudulent alteration "discharges a party whose obligation is affected

16  by the alteration unless the party assents . . . no other alteration discharges a party, and the instrument

17  may be enforced according to its original terms."[59]  An alteration is fraudulent only if it was made

18  "with the intent to obtain an advantage to which the person making the alteration had reason to know

19  he or she is not entitled."[60]  "There is no discharge . . . if a change is made with a benevolent motive .

20

21

22

23  [58] Green Tree's argument that it cannot be liable under the FDCPA because, at the time it attempted
    to collect the debt, there was no adjudication that the debt was invalid is also meritless.  Green Tree
24  offers no legal authority suggesting that the FDCPA requires that a debt be adjudicated enforceable
    (or not) at the time of the collection activity.  *See Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d
25  1049, 1053 (N.D. Cal 2009) (holding a debt does not have to be actual and extant at the time of the
    collection activity).

26  [59] NEV. REV. STAT. § 104.3407.

27  [60]  *See* 6B Anderson U.C.C. § 3-407:11 [Rev] (3d. ed.).

28                                                              11

1    . . .”[61]

2          The lender switch in the documents clearly constitutes an alteration.  But the Werbickys'

3    bare assertion that the act of changing the payee constitutes a "forgery" is insufficient to establish

4    that the alteration was fraudulent because they have not provided any evidence of fraudulent intent.

5    Neither party proffered any admissible evidence showing who (i.e. Chicago Title, Residential Capital

6    Corp, First Horizon Home Loan Corporation, etc.) is responsible for altering the note, let alone why

7    it was altered.[62]  The Werbickys aver that they reviewed and signed all of the mortgage loan

8    documents on or about January 26, 2006.[63]  In light of the fact that the mortgage-related documents

9    the Werbickys signed on that day are conflicting—some name Residential Capital Corp as the

10   lender, while others name First Horizon Home Loan Corporation[64]—a reasonable jury could

11   conclude that the alteration was a mistake, or performed to correct misinformation, and not made to

12   defraud the Werbickys.[65]

13          Whether the Werbickys assented to the alteration is also genuinely disputed.  A reasonable

14   jury could find that the Werbickys consented to the changes made to both instruments in light of the

15   facts that they (1) reviewed and signed conflicting documents on January 26, 2006, (2) signed a new

16   borrower's certification & authorization[66] and a RESPA servicing disclosure one week later, and (3)

17

18   ─────────────────

19   [61]  *See* NEV. REV. STAT. § 104.3407.

20   [62]  To the extent the Werbickys rely on the common-law rule that the material alteration of a
     promissory note by the payee or holder discharges the maker, *Mersman v. Werges*, 112 U.S. 139, 141
     (1884), they fail to submit any evidence showing it was the *payee* or *holder* that altered their note.

21
22   [63]  They testified that they went to Chicago Title on only one occasion (on or about January 26, 2006)
     to sign the mortgage documents.  ECF 121 at 26, ¶ 4; ECF 121 at 29, ¶ 4;  ECF 90 at 56:20–57:5.
23   Mr. Werbicky also testified that they post-dated certain documents to January 31, 2006, at the
     instruction of the Chicago Title representative.  ECF 69-1 at 42:5–22.

24   [64]  *Compare* ECF 121-1 at 2 *with* ECF 123-3 at 19–20 *and* ECF 123-3 at 35–36.

25   [65]  Green Tree argues that the Werbickys' testimony is "self-serving" and should be given less weight
     on summary judgment. There are circumstances where a court may disregard a self-serving affidavit
26   at the summary-judgment stage, but none are present here.

27   [66]  *Compare* ECF 121-2 at 16 *with* ECF 123-6 at 37.

28                                                    12

1   only ever made their mortgage payments to First Horizon Home Loan Corporation and never

2   received any request for payment from Residential Capital Corp.[67]

3       However, to the extent that Green Tree asserts ratification as a defense, the Werbickys are

4   entitled to summary judgment on it.  Green Tree has offered no admissible evidence to show who

5   changed the instruments or why they were changed, let alone any evidence to show that the

6   alterations were made on behalf of the Werbickys.  I therefore find that neither party is entitled to

7   summary judgment on the legal status of the note or deed of trust, and Green Tree may not argue

8   ratification as a defense at trial.

9
10  **D.     If the debt is found to be invalid, Green Tree violated 15 U.S.C. § 1692e as a matter of law.**

11      15 U.S.C. §1692e prohibits debt collectors from using "any false, deceptive or misleading

12  representation or means in connection with the collection of any debt" and contains a non-exhaustive

13  list of sixteen subsections illustrating conduct that violates the general prohibition.[68]  Section

14  1692e(2)(A) prohibits the "false representation of the character, amount, or legal status of any

15  debt,"[69] and § 1692e(10) prohibits the "use of any false representation or deceptive means to collect

16  or attempt to collect any debt."[70]  The Werbickys contend Green Tree violated both subsections

17  e(2)(A) and e(10) through the settlement offer by falsely representing that the note was enforceable

18  and that the deed of trust was valid and also by accepting the settlement payment.

19      A debt collector's liability under § 1692e is an issue of law, requiring an objective analysis

20  that takes into account whether the "least sophisticated consumer" would be misled by the

21
22
23  _____

24  [67] ECF 123-21 at 10:15–11:8; *see also* ECF 123-6 at 33.

25  [68] 15 U.S.C. § 1692e.

26  [69] 15 U.S.C. § 1692e(2)(A).  The Werbickys also mention 15 U.S.C. § 1692e(2)(B), but they fail to offer evidence establishing that this section applies here.

27  [70] 15 U.S.C. § 1692e(10).

28                                          13

1   communication.[71]  To be actionable, a debt collector's false or misleading representations must also

2   be "material"; mere "technical falsehoods" are not material.[72]  A false representation is material if it

3   "may frustrate [the consumer[s'] ability to intelligently choose [their] response."[73]

4        If a jury finds that the alterations were fraudulently made and that the note is thus invalid,

5   then Green Tree violated § 1692e as a matter of law by falsely representing that the debt was valid in

6   the settlement offer and by accepting the Werbickys' settlement payment.  Either of these false

7   representations goes to the "character, amount, or legal status," would mislead the least sophisticated

8   consumer, and would frustrate a consumer's ability to intelligently respond.  Green Tree's reliance

9   on *Donahue v. Quick Collect, Inc.* to argue that any misrepresentations it made were immaterial and

10  therefore not actionable is misplaced.  The *Donahue* court held that a collection letter that accurately

11  represented the total amount due, but inaccurately represented which portion was interest, contained

12  only a "technical falsehood" because it did not frustrate the plaintiff's ability to intelligently choose

13  her response; the total amount she owed was correctly stated.[74]  The validity of a debt, on the other

14  hand, is not a technical falsehood and would frustrate a consumer's ability to respond.

15       In sum, if a jury determines that the instruments are unenforceable, Green Tree violated 15

16  U.S.C. § 1692e as a matter of law through falsely representing that the debt was valid by extending

17  the settlement offer and also by accepting payment in settlement.

18
**E.    Neither party is entitled to summary judgment on Green Tree's bona fide error**
19  **defense.**

20       Both Green Tree and the Werbickys move for summary judgment on Green Tree's bona fide

21  error defense.  Because the Ninth Circuit has interpreted the FDCPA as a strict liability statute, the

22

23  _____

24  [71] *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (citing *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011)).

25  [72] *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010).

26  [73] *Id.*

27  [74] *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010).

28                                14

consumer does not have to prove intent to establish a violation.[75]  However, the statute's bona fide error defense provides a "narrow exception" to this strict liability:[76]

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.[77]

"The bona fide error defense is an affirmative defense for which the debt collector has the burden of proof."[78]

The Werbickys argue that Green Tree should be precluded from raising the bona fide error defense because Green Tree had "actual notice" of the FDCPA violation and because Green Tree committed "legal errors" that are not protected by the defense.  I find that Green Tree is not precluded from raising the bona fide error defense, but it is not entitled to summary judgment on it either.

### 1.    Green Tree may raise the bona fide error defense because it did not have "actual notice" of the FDCPA violation.

The Werbickys rely on the district court opinion in *McCollough v. Johnson, Rodenberg & Lauinger* to argue that Green Tree should be precluded from asserting the bona fide error defense because it is not available when the debt collector had actual notice of the FDCPA violation and the violation continues.[79]  The Werbickys contend that they placed Green Tree on notice of the alterations and forgeries with their September 9, 2011, letter and, therefore, Green Tree cannot avail itself of the defense for its post-September 9, 2011, collection activities.

I disagree.  The "actual notice" rule has been applied by courts in limited cases, and only

---

[75] *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).

[76] *Id.*

[77] 15 U.S.C. § 1692k(c).

[78] *Reichert*, 531 F.3d at 1006.

[79]  *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F. Supp. 2d 1247, 1259 (D. Mont. 2009).

when debt collectors maintained lawsuits after they received clear proof that the lawsuits were no longer maintainable.  In *McCollough*, the court held that the debt collector could not assert the bona fide error defense because it continued to maintain a debt-collection suit despite having actual notice that the suit was time-barred, via information from its creditor-client, and the debt collector did not have procedures reasonably adapted to avoid maintaining a time-barred suit.  Unlike in *McCollough*, Green Tree received information from the consumer that contradicted the representations of its creditor-client, RBS Citizens, as well as the information contained in the collateral loan file provided by the previous loan servicer, including the note with an original endorsement and a copy of the recorded deed of trust.[80]  In light of the other evidence to the contrary, the Werbickys' letter disputing the validity of the debt was not clear proof to Green Tree that it was violating the FDCPA.  Accordingly, I find that Green Tree did not have "actual notice" of the FDCPA violation at the time it occurred, and it is not precluded from asserting the bona fide error defense on this basis.

### 2. *Green Tree is not precluded from asserting the bona fide error defense under the Supreme Court's opinion in Jerman v. Carlisle.*

Citing the Supreme Court's opinion in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, the Werbickys argue that Green Tree committed "legal" errors not encompassed by the bona fide error defense.[81]  In *Jerman*, the Supreme Court held that the bona fide error defense does not shield "a debt collector's incorrect interpretation of the requirements of [the FDCPA]."[82]  Instead, the Court held that 15 U.S.C. § 1692k(c)'s requirement that debt collectors maintain procedures reasonably adapted to avoid any bona fide errors refers only to measures designed "to avoid errors like clerical or factual mistakes."[83]  The Court, however, declined to elaborate on the "precise distinction between clerical and factual errors, or what kind of factual mistakes qualify

---

[80] RBS Citizens warranted that it was the "owner of all right, title and interest in the Mortgage Loan."  ECF 122 at 47.

[81] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

[82] *Jerman*, 559 U.S. at 1624.

[83] *Id*. at 1614.

16

under the FDCPA's bona fide error defense."[84]  While acknowledging the existence of a circuit split about whether the defense applies only to misinterpretations of the FDCPA (which was the issue), or if it also applies to violations resulting from misinterpretations of state law, the Court declined to address the issue.[85]

The Werbickys characterize Green Tree's mistake as a "legal error" not encompassed by the bona fide error defense because Green Tree misinterpreted the "existence, character and status" of the debt.  To the extent the Werbickys argue that Green Tree misinterpreted the requirements of the FDCPA itself, I find there is no evidence to show that Green Tree believed it could operate within the bounds of the FDCPA by sending a settlement letter that falsely represented the "existence, character and status" of the debt.

To the extent the Werbickys argue that Green Tree misinterpreted the requirements of state law, I find that any determinations Green Tree made with respect to the "existence, character and status" of the debt were factual errors, and not mistakes of law.[86]  There is no evidence that Green Tree made any legal determination about the debt's validity under state law.  Instead, Green Tree indiscriminately accepted the instruments and other documents it obtained from the previous loan servicer as factually accurate.[87]  In *Jerman*, the Supreme Court noted the statutory phrase "procedures reasonably adapted to avoid any such error" is "more naturally read to apply to processes that have mechanical or other such regular orderly steps to avoid mistakes," rather than legal reasoning that is "not a mechanical or strictly linear process."[88]  After receiving the Werbickys' letter, Green Tree (if it acted at all) only re-audited the instruments and other documents contained in

---

[84] *Id*. at 1617 n. 12.

[85] *Id*. at 1610 n. 4.

[86] Because the parties have not addressed whether the bona fide error defense also excludes mistakes of state law, and the issue is ultimately irrelevant to my determination here, I decline to address it at this time.

[87] *See* ECF 123-1 at 5, ¶¶ 12–15.

[88] *Jerman*, 559 U.S. at 1614.

17

1   the account file by comparing them for consistency.[89]  This method is more comparable to the

2   "mechanical" process the Court described in *Jerman*, rather than nonlinear-type legal reasoning.

3   Thus, I find Green Tree's errors were factual mistakes covered by the bona fide error defense.

### 3.   Whether Green Tree maintained procedures reasonably adapted to avoid collection on an invalid debt is genuinely disputed.

6       To establish the bona fide error defense the debt collector must prove: "(1) it violated the

7   FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained

8   procedures reasonably adapted to avoid the violation."[90]

9       Green Tree conflates all three prongs of the test by arguing that it did not violate the FDCPA

10  intentionally and that any violation was a bona fide error because it followed its policies and

11  procedures.  Under the procedures prong of the test, the debt collector must show it (1) actually

12  employed or implemented procedures to avoid errors, and (2) the procedures were reasonably

13  adapted to avoid the specific error at issue.[91]  "The procedures themselves must be explained, along

14  with the manner in which they were adapted to avoid the error."[92]  And a "debt collector is not

15  entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute

16  procedures to prevent a recurrence . . . the debt collector has an affirmative obligation to maintain

17  procedures to avoid discoverable errors."[93]  There is no dispute that Green Tree implemented internal

18  auditing procedures to assess the integrity of the mortgage debts to avoid servicing errors.

19      The Werbickys argue that Green Tree lacks evidence to show that it had procedures designed

20  to detect the errors at issue here.  I disagree.  To the extent the Werbickys argue Green Tree did not

21  conduct an appropriate investigation before it started to service their mortgage loan, the FDCPA

---

23  [89] ECF 123-1 at 8, ¶ 32.

24  [90] *McCollough,* 637 F.3d at 948.

25  [91] *Reichert*, 531 F.3d at 1006–07.

26  [92] *Id*. at 1007.

27  [93] *Id*.

28                                         18

1    does not impose on debt collectors a duty to independently authenticate instruments that comprise a

2    mortgage loan.[94]  Debt collectors are permitted to "reasonably rely" on the information provided

3    them by creditors.[95]  Whether it was "reasonable" for Green Tree to rely on RBS Citizens under the

4    circumstances here is a question of fact.  Whether Green Tree's policies and procedures were

5    reasonably adapted to avoid the errors that occurred here is also a question of fact.  Accordingly, I

6    deny both parties' motions for summary judgment on Green Tree's bona fide error defense.

7    **F.    Green Tree is entitled to summary judgment on the Werbickys' § 1692f claim.**

8         Section 1692f of the FDCPA prohibits debt collectors from using "unfair or unconscionable

9    means to collect or attempt to collect any debt" and contains a non-exhaustive list of eight

10   subsections illustrating conduct that violates this general prohibition.[96]  Like with § 1692e, whether a

11   debt collector violates § 1692f is a question of law, requiring an objective analysis that considers

12   whether the "least sophisticated consumer" would be misled by the false communication.[97]

13        The Werbickys allege that Green Tree violated § 1692f(1), which prohibits a debt collector

14   from using "unfair or unconscionable means to collect a debt," including collecting any amount not

15   expressly authorized by the agreement creating the debt or permitted by law, and f(6), which

16   prohibits taking or threatening to take nonjudicial action to effect dispossession or disablement of

17   property.

18        The record does not support the Werbickys' recovery under § 1692f.  The focus of § 1692f is

19   the "*means* [the debt collector uses] to collect or attempt to collect a debt."[98]  A "means" is defined

20

21   [94] *Cf. Clark*, 460 F.3d at 1174 (stating "the FDCPA does not impose upon [debt collectors] any duty
     to investigate independently the claim presented by [creditor]"); *Smith v. Transworld Sys., Inc.*, 953
22   F.2d 1025, 1032 (6th Cir. 1992) (holding the FDCPA does not require a collection agency to perform
     an independent investigation of the debt referred for collection).

23   [95] *Id.*

24   [96] 15 U.S.C. § 1692f.

25

26   [97] *Donohue*, 592 F.3d at 1030 (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir.
     2007)).

27   [98] 15 U.S.C. § 1692f (emphasis added).

28                                                  19

as "[s]omething that helps to attain an end; an instrument; a cause."[99]  The Werbickys have failed to show that Green Tree's chosen means to settle the debt—extending a settlement offer—is unconscionable.  The Werbickys have also failed to show a violation of 1692f(6) because they have offered no evidence to show that Green Tree took or threatened to take any nonjudicial action to dispossess them of the property.  Accordingly, I find as a matter of law that Green Tree did not violate 15 U.S.C. § 1692f.  I therefore deny the Werbickys' motion for summary judgment on this theory, and I grant Green Tree's motion to the extent the Werbickys' FDCPA claim is based on § 1692f violations.  The Werbickys' FDCPA claim will proceed under § 1692e only.

**G.      The Werbickys are not entitled to summary judgment on damages.**

> ***1.      The Werbickys' actual damages are genuinely disputed.***

Under the FDCPA, "any debt collector who fails to comply with any provision . . . with respect to any person is liable to such person in an amount equal to the sum of . . .  (1) any actual damage sustained by such person *as a result of* the failure[.]"[100]  The Werbickys move for summary judgment on the issue of actual damages.  They seek $300,125 in actual damages for the cost to replace Mrs. Werbicky's life-insurance policy, which they allegedly sold to pay the settlement agreement.

I decline to grant the Werbickys summary judgment on the damages issue because whether Green Tree's alleged FDCPA violations caused Mrs. Werbicky to cash out her life-insurance policy is genuinely disputed.  The Werbickys have not shown that Mrs. Werbicky would not have surrendered her life-insurance policy but for Green Tree's failure to comply with § 1692e—that is, the false or misleading representations contained in Green Tree's settlement offer and Green Tree's acceptance of payment—on which the Werbickys' FDCPA claim is based.

Mr. Werbicky testified that he had already contemplated surrendering Mrs. Werbicky's policy in August 2011, and that he factored in the cash-out value during settlement negotiations with

---

[99] *Black's Law Dictionary*, (Brian A. Garner ed., 10th ed. Thompson Reuters 2014).

[100] 15 U.S.C. § 1692k(a)(1) (emphasis added).

Green Tree.[101]  But though the Werbickys have been careful not to divulge in any of their affidavits or evidence *when* Mrs. Werbicky surrendered her life-insurance policy, the report from their expert indicates that she received a check for the cash-surrender value of the policy on August 23, 2011—almost a month before the first alleged FDCPA violation.[102]  Given these facts, a reasonable jury could conclude that the FDCPA violations were not the reason that Mrs. Werbicky surrendered her life- insurance policy.

The fact that the Werbickys contributed the $12,246.80 from Mrs. Werbicky's life-insurance policy towards the $22,504 payment to settle the debt does not alter my analysis.[103]  Though the settlement offer may have left the Werbickys with no choice but to pay Green Tree the $22,504, it was the Werbickys who decided how they were going to pay the debt during settlement negotiations before Green Tree even extended a formal settlement offer.

In sum, the Werbickys have not established a "but for" link between Green Tree's failure to comply with § 1692e and the surrender of Mrs. Werbicky's life-insurance policy.  Nothing in the FDCPA suggests that a debt collector is liable for decisions a consumer makes in anticipation of debt collection activities that result in a FDCPA violation, which is exactly what occurred here.[104] Accordingly, the Werbickys are not entitled to a summary determination that their actual damages—should they prove their remaining FDCPA claim—are $300,125.

---

[101] ECF 127 at 23–24, ¶¶ 5, 6.

[102] ECF 121-2 at 33 (emphasis added).

[103] ECF 127 at 18:22–23 (emphasis added).

[104] *See Crum v. United Fin. Servs. LLC*, No. 14-CV-148, 2014 WL 5500666, at *2 (W.D. N.Y. Oct. 30, 2014 ) ("Any actual damages recovered by a plaintiff are intended to compensate her for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA.").

1

### 2. The Werbickys' additional damages are genuinely disputed.

2    Under the FDCPA, any debt collector who fails to comply with any provision is liable to the

3    consumer for "additional damages as the court may allow, but not exceeding $1,000[.]"[105] When

4    determining statutory damages, the court must consider "the frequency and persistence of

5    noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such

6    noncompliance was intentional[.]"[106]

7    The Werbickys claim that they are entitled to additional damages of an unspecified amount

8    because "[t]he facts of this case are not in serious question."[107]  To the extent the Werbickys argue

9    they are entitled to the $1,000 statutory maximum, their bald assertion alone does not demonstrate

10   their entitlement to it.  And Green Tree has established a genuine issue of material fact regarding its

11   intent and the nature of the noncompliance.  Accordingly, I deny the Werbickys' motion, and the

12   issue of statutory damages will also proceed to the jury.

13   **H.   Green Tree is entitled to summary judgment on the Werbickys' slander-of-title claim.**

14   The Werbickys base their slander-of-title claim on Green Tree's false "claims" that a junior

15   lien existed on the property.  To succeed on a slander-of-title claim in Nevada, a plaintiff must show

16   that (1) the defendant made a false and malicious communication that was disparaging to plaintiff's

17   title in land and (2) the plaintiff sustained special damage as a result of this communication.[108]  The

18   disparaging information must be published to a third party.[109]

19   The Werbickys offer no evidence to show that Green Tree provided any information about

20

21

---

22   [105] 15 U.S.C. § 1692k(a)(2)(A).

      [106] 15 U.S.C. § 1692k(b)(1)
23
      [107] ECF 121 at 17:26–27.
24

25   [108] *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 478 (Nev. 1998) (quoting *Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987)).

26   [109] *See* Restatement (Second) of Torts § 624 (1977); *see Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983) (relying on the Restatement and California law to define malice in a slander-of-title
27   claim).

28                                                        22

the deed of trust to anyone besides the Werbickys or their agents.  The Werbickys' communication

of the information to third parties does not constitute publication.[110]  And to the extent that the

Werbickys base their claim on the argument that Green Tree wrongfully "maintained" the

disparaging communication by refusing to release the deed of trust, I find that is not an actionable

publication for the purposes of slander of title because Green Tree did not initially record the deed of

trust.[111]  Accordingly, I grant Green Tree's motion on the Werbickys' slander-of-title claim.[112]

**I.      Green Tree is entitled to summary judgment on both of the Werbickys' intentional-interference-with-contractual-relationship claims.**

In claim three, the Werbickys allege that Green Tree intentionally interfered with the

Werbickys' contract with First Horizon (the holder of the first mortgage loan).  The Werbickys

theorize that Green Tree's refusal to release the deed of trust caused their performance of the

conditional settlement agreement with First Horizon to be more "burdensome, difficult or of less

value" because they had difficulty finding a title company and title insurance, and they were forced

to pay $22,504 on the note to remove the lien from the property to effectuate the short sale.[113]

To prevail on a claim for intentional interference with contractual relations in Nevada, a

plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the

---

[110] *Potosi v. Zinc Co. v. Mahoney*, 135 P. 1078, 1082 (Nev. 1913) (explaining that there is no publication when plaintiff receives the disparaging communication directly from defendant and then willfully displays it to a third party).

[111] *See Simmons First Nat. Bank v. Lehman*, Case No. 13-cv-02876, 2015 WL 1503437, at *4 (N.D. Cal. Apr. 1, 2015) (citation omitted) (holding refusal to remove a deed of trust recorded by another party does not constitute publication because slander of title requires an "affirmative" act of publication).

[112] I note that the parties made several arguments relating to the other elements of slander of title, which I reviewed but determined did not warrant discussion because they do not affect the outcome of this order.

[113] Restatement (Second) of Torts § 766A (1979) (emphasis added); *see also Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 66 (3rd Cir. 1994) (citation and internal quotation marks omitted) ("[S]ection 766 addresses disruptions caused by an act directed not at the plaintiff, but at a third person: the defendant causes the promisor to breach its contract with the plaintiff.  Section 766A addresses disruptions caused by an act directed at the plaintiff: the defendant prevents or impedes the plaintiff's own performance.").

contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.[114]

The Werbickys argue that because Green Tree knew about the conditional settlement agreement and the allegations that the note was altered, that is sufficient to establish Green Tree intended to disrupt the Werbickys' performance under the agreement. But that is not enough to show that Green Tree's actions were *intended or designed* to disrupt the Werbicky-First Horizon relationship. As the Nevada Supreme Court has explained, specific intent is required:

> The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. Inquiry into the motive or purpose of the actor is necessary . . . . Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly.[115]

The record does not support that Green Tree had an improper intent to interfere with the Werbickys' performance of the conditional settlement agreement. A debt collector sending an offer to settle a mortgage loan, at the consumer's request, is not improper in and of itself. There is also no evidence that Green Tree was motivated by a desire to interfere with the contractual relations. Rather, the evidence shows that Green Tree wanted to "settle" the disputed account and recover whatever funds it could to complete its servicing duties.[116] In short, Green Tree was contractually obligated to service the mortgage loan and the evidence shows that Green Tree acted to promote its own interests in servicing that loan, rather than to make performance of the conditional settlement agreement more expensive or burdensome for the Werbickys. Accordingly, I grant Green Tree's motion on claim three for interference with the Werbickys' contractual relationship with First Horizon.

In claim four, the Werbickys allege that Green Tree intentionally interfered with the

---

[114] *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (citation omitted).

[115] *Id.* at 1268.

[116] *See* ECF 121-2 at 2.

24

contractual relationship between themselves and the short-sale buyer.  This claim is not supported by the record.  For one thing, it is unclear how Green Tree could have improperly interfered with the Werbickys' contractual relationship with the buyer when First Horizon ultimately had to approve the short sale.  Thus there is no evidence that Green Tree actually interfered with this relationship, and there is zero evidence that, even if it did, that was Green Tree's motive in acting.  I therefore grant Green Tree's motion for summary judgment on claim four.

### Conclusion

Accordingly, it is HEREBY ORDERED, ADJUDGED, and DECREED that **Plaintiffs' Motion for Summary Judgment [ECF 121] is GRANTED in part and DENIED in part**:

**(1) It is GRANTED** on Green Tree's ratification affirmative defense.  Green Tree cannot raise a ratification defense at trial.

**(2) It is DENIED** on all remaining claims and defenses.

IT IS FURTHER ORDERED that **Defendants' Motion for Summary Judgment [ECF 123] is GRANTED in part and DENIED in part:**

**(1) GRANTED** on the violation of 15 U.S.C. § 1692f theory in claim one.  **Claim one will proceed based on a violation of 15 U.S.C. § 1692e only.**

**(2) It is GRANTED** on the slander-of-title claim (claim two).

**(3) It is GRANTED** on the intentional-interference-with-contractual-relationship claims (claims three and four)

**(4) It is DENIED** on all remaining claims and defenses.

IT IS FURTHER ORDERED that this case is referred to a magistrate judge for a settlement conference.

DATED March 28, 2016

_____
Jennifer A. Dorsey
United States District Judge

25